UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRENDAN TANKERSLEY,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br>MGM RESORTS INTERNATIONAL, *et al.*,<br><br>　　　　　　　　Defendants. | Case No: 2:20-cv-00995-RFB-DJA<br><br>**ORDER**<br><br>Motion to Dismiss Amended Complaint<br><br>(ECF Nos. 24 & 25) |

**I. INTRODUCTION**

Before the Court are Defendant Bellagio, LLC's Motion to Dismiss Amended Complaint (ECF No. 24) and Defendant MGM Resorts International's ("MGMRI") Motion to Dismiss Amended Complaint (ECF No. 25).

**II. PROCEDURAL HISTORY**

On June 3, 2020, the Complaint was removed from Eighth Judicial Court. ECF No. 1. On July 10, 2020, Defendants Bellagio and MGM Resorts International ("Defendants") each filed a Motion to Dismiss. ECF Nos. 16, 17. On July 24, 2020, Plaintiff filed the First Amended Complaint. ECF No. 18. On August 20, 2020.

On April 7, 2020, Defendants each filed Motions to Dismiss the Amended Complaint. ECF Nos. 24, 25. On September 1, 2020, Plaintiff responded to each Motion to Dismiss. ECF Nos. 28, 29. On September 21, 2020, Defendants replied. ECF Nos. 37, 36. On March 17, 2021, Magistrate Judge Albregts issued an order granting a stipulation for a discovery scheduling extension, in

which discovery is due by July 12, 2021, motions due by August 11, 2021, and a proposed joint pretrial order due by September 10, 2021. ECF No. 45. On March 30, 2021, the Court issued a minute order denying Defendants' Motion to Dismiss (ECF Nos. 16, 17) as moot without prejudice given the filing of (ECF No. 18) First Amended Complaint. ECF No. 48. On March 29, 2021, the Court rescheduled oral argument for Defendants' Motion to Dismiss First Amended Complaint (ECF Nos. 24 & 25). ECF No. 47. The Court instead issues the below written order below.

**III. ALLEGED FACTS**

Plaintiff alleges the following facts in the First Amended Complaint. ECF No. 18.

Beginning May 2008, Plaintiff was employed by Defendants as an electrician running tracks for MGM's production of Cirque du Soleil's "O" show. In 2015, Plaintiff was moved into the carpentry department to run tracks assigned to the carpentry department. Plaintiff was qualified for the position, performed his job duties at or above a level that Defendants had a reasonable right to expect, and never received any disciplinary action.

One act within "O" is referred to as the "Burning Man" in which a performer is lit on fire by Coleman® Fuel. In early 2017, after working as a carpentry employee for over two years, Plaintiff was assigned to tracks L3 and 5 ("Burning Man tracks"). Carpentry employees assigned to the Burning Man tracks are in continuous, direct contact with Coleman® Fuel while fueling the clothing and props for the act, and directly exposed to the heat, fumes, and gas when extinguishing the Burning Man performer and props. In 2017, Plaintiff suffered a seizure and sought medical care. He was diagnosed with seizure disorder. In December 2017, Plaintiff began seeing a board-certified neurologist, and over the next six months, Plaintiff underwent additional medical testing. Plaintiff's neurologist found that working directly with the Coleman® Fuel and associated heat, fumes, and gas was, at the very least, exacerbating Plaintiff's seizure disorder.

On or about February 2018, Plaintiff asked Carpenter Head John Ferdinand and Carpentry Department Supervisor Steve Dietrick to not assign him to the Burning Man tracks because of his disability. Ferdinand replied, "We can't make accommodations," and Dietrich replied similarly.

Plaintiff questioned Dietrich's decision, and pointed out that there were 12 other tracks that management could assign him to. Because his requests "fell on deaf ears," on or about October 2018, Plaintiff informed Dietrich that he would no longer work on the Burning Man tracks. Id. at 9. Within a few days, Plaintiff, Dietrich, Ferdinand, Defendant MGMRI's Senior Employee Relations Partner Lindsay Jarowski, and Defendant Bellagio's Vice President of Human Resource Brenda Dysinger had a meeting about Plaintiff's reasonable accommodation request to not be assigned to the Burning Man tracks. Defendants provided Plaintiff with an ADA Packet at the meeting with one part to be completed by his neurologist and a second part to be completed by him. On October 31, 2018, Plaintiff returned a completed ADA Packet to Defendants.

On December 5, 2018, Defendants met with Plaintiff and handed him two prepared documents. The first document concluded that based on Plaintiff's neurologist's paperwork, that Plaintiff's requested accommodation was not reasonable. Jawroski told Plaintiff the request was denied because the neurologist's paperwork was too "vague." The document also informed Plaintiff that continued employment with Defendants was contingent upon, within 30 days, finding, applying, interviewing, and being selected for another job. If Plaintiff could not do this, Plaintiff's employment with Defendant would be terminated. The second document was a waiver that informed Plaintiff that he could remain employed in his current position if he agreed to withdraw his request for an accommodation. The wavier required Plaintiff to state that he withdrew his "request for a job-related ADA accommodation at Bellagio and understand[s] that Bellagio will discontinue its involvement in the interactive process under the ADA at this time." Id. at 11. Plaintiff alleges that he was "coerced and pressured by the threat of termination under the job search option and forced to give up his rights under the ADAAA so his employment was secure and knew he could continue to support himself and his family." Id.

On January 20, 2019, Plaintiff suffered a seizure while working on the Burning Man tracks. Because of the seizure, Plaintiff was put off work for three days, and then placed on light-duty. After being released to fully-duty on March 26, 2019, Plaintiff worked for 2 days, and then Defendants placed him on involuntary unpaid leave of absence until May 8, 2019. On January 30,

2019, Plaintiff contacted Jaworski, inquiring if the options offered to him in December 2018 would be the same options offered if he requested another accommodation. Jaworski referred Plaintiff to correspond with Alison Hendricks, and Plaintiff received a new ADA Packet on or about February 14, 2019. Throughout, Plaintiff reached out to Henricks about his working conditions. On or about April 10, 2019, Plaintiff provided Defendants with the completed ADA Packet. Plaintiff and Hendricks corresponded several times about the status and completion of the ADA Packet.

On May 8, 2019, Plaintiff was told he would begin a temporary assignment on May 10, 2019, at the MGM production of Cirque du Soleil's "Zumanity," which does not have any fire elements or pyrotechnics. On July 22, 2019, Plaintiff was informed he would no longer be needed at Zumanity, beginning July 23, 2019. Plaintiff contacted Hendricks, who did not reply. Plaintiff was then told that Diana Castrillion would now be handling his case. On July 30, 2019, Castrillion notified Plaintiff that his accommodation was granted, and that starting August 1, 2019, he was to work at the MGM production of Cirque du Soleil's "Michael Jackson One." Michael Jackson One uses heavy pyrotechnics and directly exposed Plaintiff to fumes. Plaintiff and Castrillion corresponded regarding Plaintiff's workplace conditions and requested accommodation. On August 8, 2019, Plaintiff was given an ultimatum: work at Michael Jackson One or take a leave of absence. Plaintiff chose a leave of absence. On August 9, 2019, Plaintiff was offered temporary work as a carpenter at Zumanity for August 10 and August 11. On August 12, 2019, Plaintiff was offered and accepted a on-call electrician job at Zumanity.

On or about August 29, 2019, Plaintiff filed a formal Charge of Discrimination and Retaliation based on disability with the Nevada Equal Rights Commission and EEOC, indicating that Defendants' discrimination and retaliation started June 2018 and was a continuing action through August 11, 2019. On or about October 25, 2019, Defendant MGM answered the EEOC's demand for a position statement. On November 27, 2019, the EEOC issued Plaintiff's Notice of Right to Sue.

/ / /

/ / /

### IV. LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### V. DISCUSSION

The Court addresses Defendants' Bellagio and Defendant MRI's Motion to Dismiss Amended Complaint together because they both contain the same arguments about why Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. Defendant MGMRI's Motion to Dismiss had an additional argument to dismiss Plaintiff's claims based on failure to exhaust grounds, but in its reply, withdraws its request. ECF No. 36 at 5.

Defendants argue that Plaintiff failed to sufficiently plead his causes of action: first and second cause of action of interference in violation of the Americans with Disabilities Act ("ADA")

and Nevada state law (NRS 613.330), and the third and fourth case of action of discrimination (failure to accommodate) in violation of the ADA and Nevada State Law (NRS 613.330). With respect with the first and second interference claim, Defendants argue that Plaintiff failed to identify a right expressly granted by the ADA; that his argument is premised on the mistaken belief that Plaintiff is entitled to an accommodation of his choice; does not identify any coercion or threats prohibited by the ADA; Plaintiff was given an accommodation every time he requested one and placed into the position he asked to be placed. With respect to the third and fourth cause of action of failure to accommodate, Defendant argues that Plaintiff's initial request to be removed from the Burning Man tracks was reasonably denied, and that alternative accommodations were provided, including Plaintiff's preferred position at Zumanity.

Plaintiff argues that his Complaint is sufficiently pled. He argues that he meets the elements of a prima facie case of discrimination because he is disabled within the meaning of the ADA because of his seizure disorder, is a qualified individual able to perform the essential functions of the job with or without a reasonable accommodation and suffered an adverse employment action because of his disability. Plaintiff argues that when Defendants interfered with his ADA rights, he was consequently injured when he suffered a seizure working on the Burning Man tracks, placed on an involuntary leave of absence, and lost wages. With respect to failure to accommodate, Plaintiff alleges that the assisted job search and unilateral reassignments that Defendants offered were not reasonable accommodations.

The Court finds that Plaintiff's allegations in the First Amended Complaint state cognizable claims to relief that survives Defendants' Motion for Dismiss. With the facts construed in the light most favorable to the non-moving party, Plaintiff shows that (1) Plaintiff is disabled within the meaning of the ADA because of his seizure disorder; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation given that he can perform his work on tracks or areas without fire, gas, or heat; and (3) he suffered an adverse employment action because of his disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003)).

Plaintiff's alleged facts show that on and before December 5, 2018, Plaintiff requested a reasonable accommodation to be assigned away from the Burning Man tracks. Plaintiff suffered a seizure and his neurologist told him that exposure to Coleman® Fuel and the associated heat, fumes, and gas when he was working on the Burning Man tracks was at the very least, exacerbating Plaintiff's seizure disorder. After denying several requests for reasonable accommodations, Defendants asked Plaintiff to submit a completed ADA Packet, which Plaintiff completed and submitted. However, on December 5, 2018, without engaging in good faith in the interactive process, Defendant unilaterally denied Plaintiff's request and gave him a waiver to give up his rights under the ADA or possibly lose his job. Plaintiff gave up his rights. Plaintiff continued to work on the Burning Man tracks and on January 20, 2019, suffered a seizure at work while working on them. He went on leave, was placed on light-duty, released back to full-duty, and then placed on involuntary unpaid leave of absence. Meanwhile, Plaintiff attempted to seek reassignment again from Defendant to work away from heat, fumes, and gas. These facts show "a short and plain statement" that Plaintiff is entitled to relief, such as his interference claim that require a a showing of elements such as that an individual "(1) exercised or enjoyed a right expressly granted by the ADA, such as requesting or receiving an accommodation; (2) he was subjected to interference, coercion or threats in relation to the exercise or enjoyment of that right; and, (3) he suffered 'a distinct and palpable injury' as a result." Fed. R. Civ. P. 8(a); Brown v. City of Tuscon, 336 F.3d at 1181 (citing Walker v. City of Lakewood, 272 F.3d 1114, 1123 (9th Cir. 2001))

Defendant argues that Plaintiff was offered accommodations, and that the amended complaint "outlines no fewer than fourteen (14) separate interactive conversations between Plaintiff and Human Resources regarding his requested accommodations, FAC ¶¶ 35-79, and four distinct accommodations that Defendant provided to Plaintiff from October 2018 – August 2019." ECF No. 24 at 6; ECF No. 25 at 8. However, the Court finds that Plaintiff has met the standard for overcoming a motion for judgment on the pleadings at this stage of the litigation. Plaintiff's alleged facts, such as how Defendant informed Plaintiff that there was no reasonable accommodation available to keep him in his current position and how Plaintiff withdrew from the interactive

process on December 5, 2018 so that he could keep his job, plausibly suggest with reasonable inference, that Plaintiff's claims of Defendants' interference and failure to accommodate under the ADA and Nevada state law, entitle Plaintiff to relief.

Plaintiff voluntarily withdraws his fifth cause of action of negligent hiring, retention, and supervision against both Defendants and so the Court dismisses this claim.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Bellagio, LLC's Motion to Dismiss Amended Complaint (ECF No. 24) and Defendant MGM Resorts International's ("MGMRI") Motion to Dismiss Amended Complaint (ECF No. 25) are DENIED in part and GRANTED in part. Plaintiff's fifth cause of action of negligent hiring, retention, and supervision is dismissed against Defendants. All other claims proceed.

**IT IS FURTHER ORDERED** that the hearing on these motions set for April 9, 2020 is VACATED.

**IT IS FURTHER ORDERED** that the Plaintiff shall have full access to discovery from Defendants regarding the full range of possible positions across the various shows and performances presented by the Defendants and access to all discovery regarding positions that were open and filled during the period of time that Plaintiff was requesting an accommodation. The Plaintiff shall all be entitled to information about other accommodations that may or may not have been granted to other employees under the ADA so long as the information regarding such personnel records is protected by the existing protective order. The Court finds such information to be relevant to the claims in this case and shall be produced pursuant to an appropriate discovery request by Plaintiff.

**DATED**: March 31, 2021.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE