UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRENDAN TANKERSLEY, | Case No. 2:20-cv-00995-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| MGM RESORTS INTERNATIONAL, et al. | |
| Defendants. | |

## I. INTRODUCTION

Before the Court are Defendants Bellagio, LLC ("Bellagio") and MGM Resorts International's ("MGMRI") (together, "Defendants") Motion for Summary Judgment (ECF No. 66) and Plaintiff Brendan Tankersley's Motion for Summary Judgment (ECF No. 85).

For the foregoing reasons, both motions are denied.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his complaint against Defendants on February 25, 2020. ECF No. 1-3. The Complaint alleged four causes of action against Defendants for disability-based discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and Nevada Revised Statute ("NRS") 613.330. Id. On June 3, 2020, Defendants removed this action from the Eighth Judicial District Court. ECF No. 1. On July 10, 2020, Defendant MGMRI and Bellagio filed motions to dismiss the Complaint. ECF Nos. 16, 17.

On July 24, 2020, Plaintiff filed the operative, First Amended Complaint ("FAC") bringing five causes of action. ECF No. 18. On August 20, 2020, Defendants MGMRI and Bellagio filed motions to dismiss the FAC. ECF Nos. 24, 25. On March 31, 2021, the Court denied Defendants'

motions to dismiss, and Plaintiff voluntarily withdrew his fifth cause of action of negligent hiring, retention, and supervision. ECF No. 49. On April 14, 2021, Defendants filed separate answers to the FAC. ECF Nos. 50, 51.

On March 9, 2022, Defendants filed their instant Motion for Summary Judgment. ECF No. 66. On April 28, 2022, Defendants filed an ERRATA to the Motion for Summary Judgment. ECF No. 75. On August 10, 2022, Plaintiff filed his Response. ECF No. 94. Defendants filed their Reply on October 31, 2022. ECF No. 105.

On July 13, 2022, Plaintiff filed his instant Motion for Summary Judgment. ECF No. 85. On August 24, 2022, Defendants filed a Response, ECF No. 99, and on October 31, 2022, Plaintiff filed his Reply, ECF No. 106.

This Order follows.

### III. FACTUAL BACKGROUND
#### a. Undisputed Facts

The Court finds the following facts to be undisputed.

Plaintiff Brendan Tankersley has suffered from seizures since at least December 2016.

In May 2008, Plaintiff was hired by Defendant Bellagio as a spot operator for the Electrics Department in the MGM production of Cirque du Soleil's "O" show (the "show"). Plaintiff transferred from the Electrics Department to the Carpentry Department in July 2015. The Carpentry Department was responsible for 15 show cue tracks, each of which handles some aspect of the show. Plaintiff was trained to work on seven of the 15 department's cue tracks: SL3, SL4, SL5, SR2, DC1, DC5, and DC6. One of these tracks, SL3, involved a performer who enters the stage on fire, where they cross to center stage and read a burning newspaper while sitting in a burning chair. The act, referred to as "Burning Man," involved the use of Coleman fuel as the accelerant. The SL3 carpenter's job duties involve prepping, extinguishing, and undressing the Burning Man performer. At least some other tracks involve the use of Coleman fuel. Plaintiff was assigned to SL3 periodically, not every performance.

From January 2018 to April 2019, John Ferdinand served as the Head of Carpentry. The

Assistant Head of Carpentry, who reports directly to the Head of Carpentry, was Steven Dietrich during this time. In early 2018, Plaintiff informed Ferdinand and Dietrich and requested an accommodation of not being assigned to the SL3 track, indicating the track's heat, fumes, and gasses triggered his condition.

After several months, on July 7, 2018, Plaintiff emailed the Director of Human Resources regarding his requested accommodation. As part of the interactive process between an employee requesting an accommodation and their employer, a meeting was organized. On July 13, 2018, Plaintiff met with Bianey Martinez, Employee Relations ("ER") Partner, who provided Plaintiff with an ADA packet consisting of a "Verification of Limitations," a "Request for Accommodation" to be completed by the employee, and Request for Information from Health Care Provider. On Monday, August 27, 2018, Plaintiff suffered an injury outside work and unrelated to his seizure condition; he did not return until October 17, 2018. During the period between receiving the ADA packet on July 13 and his return to work on October 17, 2023, Plaintiff used intermittent leave under Family and Medical Leave Act, 29 U.S.C. § 2601, when he was assigned to work SL3. When Plaintiff returned, he met with Lindsay Jaworski, a senior ER Partner, Brenda Dysinger, the then-Director of Human Resources, and Dietrich.

After Plaintiff's Neurologist Dr. Jay Mahajan completed the Request for Information, Plaintiff returned the completed ADA packet to the Defendants by early November. On November 5, 2018, Jaworski asked Head of Carpentry Ferdinand to send her the job description for the carpentry job Plaintiff held. On November 20, 2018, Mahajan and Ferdinand discussed Plaintiff's requested reasonable accommodation to be removed from the SL3 track, although at the time she did not have the essential functions list of the carpenter position. Ferdinand told Jaworski they cannot make the accommodations.

On December 5, 2018, Plaintiff and Jaworski met to discuss Plaintiff's requested reasonable accommodation (the "first meeting"). During the meeting, Jaworski gave Plaintiff two documents, a Denial Letter / 30-day Job Placement Assistance and a Waiver of ADA Rights/ Bellagio's Withdrawal From The Interactive Process. Defendants' "30 day placement assistance" is a "job search" to identify "alternative open positions" and continuing employment is "contingent

upon [the employee] securing an alternative position." Jaworski told Plaintiff that, based on the restrictions from Mahajan, Defendants were unable to grant the requested accommodation "within the department." Plaintiff explained the restrictions from Mahajan were in the event he had a seizure otherwise he was able to perform 100% of his job but, rather, he needed the requested accommodation to avoid triggering a seizure. Jaworski informed Plaintiff that Mahajan's documentation needed clarifications.

Plaintiff withdrew his request for an accommodation. He declined Defendants' 30-day job search because he needed to work, withdraw his request, and returned to work. Defendants' Waiver of ADA Rights/ Bellagio's Withdrawal From The Interactive Process document reads as follows:

> On 12/5/18, you notified Employee Relations that you wished to discontinue the interactive process and no longer wanted to request an ADA accommodation. At that time, you expressed no concerns about your ability to perform the essential functions of your job. If this is correct, please sign the confirmation below and return the signed the document to Lindsay Jaworski, Senior ER Partner in Employee Relations.
>
> . . . .
>
> I, Brendan Tankersley (Employee #47466), withdraw my request for job-related ADA accommodation at Bellagio and understand that Bellagio will discontinue its involvement in the interactive process under the ADA at this time.

After signing both documents that day, Plaintiff is allowed to continue working and did so until January 20, 2019, when he suffered a seizure between shows.

Following the seizure, Plaintiff filed a workers' compensation claim and was placed on light duty. During this time, he contacted Jaworski and asked for a new ADA packet. On February 14, 2019, he met with an ER representative and received the packet. On March 15, 2019, his healthcare provider sent the completed Request for Information from Healthcare Provider form. Plaintiff returned to work with a return-to-work letter signed by Dr. Mahajan, which he presented to Ferdinand. Plaintiff was told no accommodation decision had been reached on his second application and he was placed on medical leave.

On April 2, 2019, Plaintiff received a third ADA packet from ER. After receiving the packet, ER contacted Dr. Mahajan for clarification on April 26, 2019, and May 3, 2019. Plaintiff

began a temporary full-time position on another show, Zumanity, on May 10, 2019, which lasted until July 23, 2019. On July 11, Dr. Mahajan provided clarification responses. ER informed Plaintiff that he was granted a reasonable accommodation and was to join the show Michael Jackson ONE ("MJ1") full-time, beginning August 1, 2019. On July 31, 2019, Plaintiff emailed ER asking to be placed on a part-time lighting position on Zumanity instead.

Plaintiff reported to work on August 1, 2019. On August 4, 2019, Plaintiff renewed his request to be placed on Zumanity, saying the pyrotechnics on MJ1 were inconsistent with his ADA request. A meeting was coordinated with ER for August 8, 2019. Following the meeting, Plaintiff was placed in the part-time Zumanity lighting position he requested.

Plaintiff remained in that position until he was furloughed during the Coronavirus pandemic in March 2020. Plaintiff was terminated in August 2020 through a reduction in force. Neither the termination nor the furlough is part of the instant case.

### b. Disputed Facts

The Court finds the following facts in dispute.

Whether, at the time of the first meeting, reasonable accommodations were available to keep Plaintiff on the show; whether, at the time of the first meeting, reasonable accommodations were available to place Plaintiff in other appropriate work; whether and to what extent Plaintiff refused to engage in the interactive process or consider alternative accommodations; whether and to what extent Defendants refused to engage in the interactive process or consider alternative accommodations; whether Defendants had a "100% Healed" policy; whether Defendant's offer of 30 day job placement assistance was a reasonable accommodation.

### IV.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light

most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

When considering cross-motions for summary judgement on the same claims, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001); see also Tulalip Tribes of Wash. V. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.") (cleaned up). Both parties in each instance receive the benefit of all reasonable inferences. ACLU of Nev. v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003).

## V. DISCUSSION

Plaintiff Tankersley alleges Defendants conduct violated the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 et seq., and the Nevada anti-discrimination statute ("NADS"), NRS 613.330 et seq. Plaintiff brings four causes of action: (1) Discrimination under the ADA; (2) Discrimination under NADS; (3) Interference under the ADA; and (4) Interference under NADS.

Nevada courts apply the ADA approach to plaintiff's state law claims under NADS. The Supreme Court of Nevada has held that "[i]n light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases." Pope v. Motel 6, 121 Nev. 307, 311 (2005); see also Apececbe v. White Pine County, 96 Nev. 723, 726 (1980) ("NRS 613.330(1) is almost

identical to § 703(a)(1) of Title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e-2(a)(1))" and citing extensively to federal caselaw); Copeland v. Desert Inn Hotel, 99 Nev. 823, 826 (1983) ("We approve of the general reasoning of the above [federal] authorities. Like their federal counterparts, the Nevada antidiscrimination statutes have laudable goals and will be broadly construed.").

Therefore, the Court analyzes Plaintiff's ADA and NADS claims together, relying on federal authority in the absence of contrary or differing Nevada state law.

### a. Claims of Discrimination for Failure to Accommodate

Under the ADA, a plaintiff must first establish a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The ADA recognizes the failure to provide reasonable accommodation as a form of discrimination. See 42 U.S.C. § 12112(b)(5)(A). To make out a prima facie case for the failure to provide a reasonable accommodation, a plaintiff must show (1) the employee is a qualified individual, (2) the employer receives adequate notice, and (3) a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. Snapp v. United Transp. Union, 889 F.3d 1088, 1096 (9th Cir. 2018), cert. denied sub nom. Snap v. Burlington N. Santa Fe Ry. Co., 139 S. Ct. 817 (2019).

The McDonnel Douglas burden-shifting framework applies at summary judgment here. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). That is, first, the employee must make a prima facie showing of discrimination. Id. "The burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." Id. If the employer can establish as much, the burden returns to the employee, who must then show that the proffered reason is pretextual. Id.

Since there are cross-motions for summary judgement, the Court will (1) first review the evidence for the prima facie case in the light most favorable to Plaintiff and the legitimate reason analysis in the light most favorable to Defendant and (2) second determination at the end of each section to determine if that element was established as a matter of law. Only the evidence properly before the Court in support of each motion is relied upon by the Court for addressing that motion. See Riverside Two, 249 F.3d at 1134.

i. <u>Prima Facie Case: Whether Plaintiff is an ADA Qualified Individual</u>

Under the ADA, a qualified individual with a disability is an "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." <u>Humphrey v. Mem'l Hosps. Ass'n</u>, 239 F.3d 1128, 1133 (9th Cir. 2001) (quoting 42 U.S.C. § 12111(8)). "The court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position. The court then considers whether the individual can perform the essential functions . . . with or without a reasonable accommodation." <u>Samper v. Providence St. Vincent Med. Ctr.</u>, 675 F.3d 1233, 1237 (9th Cir. 2012). The plaintiff "bears the burden to prove that he is qualified." <u>Bates v. United Parcel Serv., Inc.</u>, 511 F.3d 974, 990 (9th Cir. 2007). If "an employer challenges an ADA plaintiff's claim that he can perform the job's essential functions," then the "burden of production [is] on the employer to come forward with evidence of those essential functions." <u>Id.</u> at 991.

Plaintiff argues that he is a qualified individual under the ADA because he both has the experience, skills, and licenses for the carpenter position and that he could perform in the role with reasonable accommodations. Defendants argues that Plaintiff cannot dispute that he was not able to perform the essential functions of the show since Plaintiff's ADA paperwork identified essential elements of the show as tasks he could not do or conditions he could not endure.

Whether Plaintiff could have continued in a position on the show is a disputed fact. While he certainly had the requisite skills to perform in the role, <u>Anthoney v. Trax Int'l Corp.</u>, 955 F.3d 1123, 1128-29 (9th Cir. 2020) ("We first determine whether the individual satisfies the prerequisites of the job. . . ."), the record is mixed on whether his seizures could have been triggered by the other tracks and to what extent any position on the show would place him or others in danger of harm, <u>id.</u> at 1129 ("[Next], we determine whether, with or without reasonable accommodation the individual is able to perform the essential functions of such position.") (internal quotations omitted). Further, elsewhere in the record there is evidence that other positions could have been available, for example, the positions on MJ1 and Zumanity that Plaintiff later took. See <u>Allen v. Pac. Bell</u>, 348 F.3d 1113, 1116 ("[E]ven if [the plaintiff] was not qualified to

perform [his original job] with reasonable accommodation, [the defendant] still had a duty to engage with the interactive process to consider whether alternative accommodation within the company would be possible."). Whether these were available at the time of the first meeting is a material fact in dispute. Thus, viewing the evidence in the light most favorable to Plaintiff, he could establish that he is a qualified individual under the ADA. At the same time, the Court also finds that, when the evidence is viewed in the light most favorable to the Defendants, Plaintiff is unable to show that he is a qualified individual as a matter of law.

                    ii.  Prima Facie Case: The Presence of Adequate Notice

There is no dispute that, by the time of the first meeting, Plaintiff had sent multiple emails, engaged in multiple conversations, and provided information regarding his alleged condition and need for accommodation. Defendants themselves describe "abundant, undisputed evidence demonstrating the efforts to engage in the interactive process with Plaintiff[; including that] paperwork was facilitated, meetings held, clarifications sought, accommodations offered, declined, and accepted." As such, the Court finds that adequate notice through the initiation of the interactive process has been established as a matter of law. See Snapp, 889 F.3d at 1095.

                    iii.  Prima Facie Case: The Availability of Reasonable Accommodation

Once an employer becomes aware of the need for an accommodation, there is an obligation for that employer to engage in an interactive process with the employee to identify and implement reasonable accommodations. Barnett v. U.S. Air, 228 F.3d 1105, 1114 (9th Cir. 2000). The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. Id. At 1114-15. As long as a reasonable accommodation available to the employer could have plausibly enabled a requesting employee to adequately perform his job, an employer is liable for failing to attempt that accommodation. Humphrey, 239 F.3d at 1136 (quoting Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 879 (9th Cir. 1989) (addressing leaves of absence)). If an employee is disabled and qualified to perform their job duties, employers have an affirmative duty to "explore further methods of accommodation before terminating [the employee]." Id. at 1137; see also EEOC v. Yellow Freight Sys., 253 F.3d 943, 951 (9th Cir. 2001)

1  (en banc) ("[A]n employer is not obligated to provide an employee the accommodation he requests
2  or prefers, the employer need only provide some reasonable accommodation.").

3  Plaintiff argues that Defendants did not consult with Plaintiff to identify where the limitations for Plaintiff were and how those limitations could be reasonably accommodated. Plaintiff argues that Defendants' offer of job placement assistance was not a reasonable accommodation since that process simply consists of providing a public list of positions and requiring the applicant to follow the normal interviewing process. Plaintiff also points to a 100% healed policy as *per se* discriminatory. Finally, Plaintiff argues that simply shifting SL3 to another employee would accommodate him in the original position. As evidence of the reasonability of this accommodation, Plaintiff points to the relatively small number of nights he was assigned to SL3, that he was permitted to take medical leave on those nights, and that he was open to being trained to other tracks.

Defendants argue every carpenter position requires proximity to heat, smoke, fire, and fumes and Plaintiff's requested accommodation did not comply with the restrictions identified by his doctor. Since no position could be identified, Plaintiff was offered job placement assistance. When Plaintiff clarified that his doctor's requirements were overly restrictive, Plaintiff was given the opportunity to take the paperwork back to his physician and withdrew his accommodation request. Finally, Defendants argue that Plaintiff was, after the first meeting, given alternative positions and, eventually, his position of choice.

As described above, whether reasonable accommodation was possible on the show is in dispute, and similarly, whether a reasonable accommodation to place Plaintiff on another show or in alternative positions outside of the shows, is also in dispute. See Allen, 348 F.3d at 1115-16 (discussing the employer's obligation to place elsewhere in the business). Plaintiff avers that his requested accommodation to not be placed on SL3 was reasonable or, in the alternative, he was willing and able to be placed in other carpentry work. Defendants argue that an accommodation that satisfied Plaintiff's own ADA paperwork was impossible.

Whether and to what extent Plaintiff rejected alternative positions is in dispute. See EEOC, 253 F.3d at 951 (finding an employer fulfilled their obligation where the ADA-applicant refused

to consider alternatives to an unreasonable request). Plaintiff argues and presents evidence that Defendants failed to engage with him, rebuffed his efforts to find a reasonable accommodation. By contrast, Defendants argue and present evidence that they robustly engaged with Plaintiff and others in a good faith effort to identify a position and it was Plaintiff who rejected their efforts.

Regarding the 100% healed policy, such a policy is certainly relevant. See McGregor v. AMTRACK, 187 F.3d 1113 (9th Cir. 1999) (holding that a 100% healed policy is a *per se* violation of the ADA because such a policy fails to allow a case-by-case determination for accommodations). Here, the existence and meaning of the alleged 100% healed policy is a disputed material fact. See id. (remanding where the existence of a 100% healed policy or its equivalent was a disputed material fact).

The adequacy of the offer of 30-day job placement assitance is similarly in dispute. Plaintiff argues the assistance is tantamount to termination. Defendants argues that, in effect, Defendants identified and placed Plaintiff in three alternative positions: full-time lighting at Zumanity, full-time carpentry on MJ1, and a part-time lighting at Zumanity.

Viewing the above in the light most favorable to Plaintiff, he can make out the final element of his prima facie case. However, the Court finds that Plaintiff has not established the availability of reasonable accommodations as a matter of law, since, taking the evidence in the light most favorable to Defendants, a reasonable jury could conclude such accommodations were unavailable.

### iv.  Legitimate or Pre-Textual Reason for the Failure to Accommodate

Defendants principally argue, as above, that a reasonable accommodation was not available. They further argue that, even if such an accommodation was available on the show, refusing such an accommodation was legitimately based on safety concerns for Plaintiff and other workers. Should Plaintiff have suffered a seizure while performing underwater diving, fire-related, or other dangerous functions on the show, it could have placed him in danger or others in danger. Significantly, Defendants point to testimony from Plaintiff's doctor to that effect. By contrast, Plaintiff argues that any engagement in the interactive process was pretextual—that Defendants did not seek a reasonable accommodation or engage in good faith to determine if one was available. Instead, Plaintiff argues that the effective threat of termination at the first meeting is sufficient to

establish an ADA violation.

As discussed above, the facts underpinning each argument are in material dispute. Read in the light most favorable to them, Defendants can rebut Plaintiff's prima facie case. Read in the light most favorable to him, Plaintiff, in turn, could rebut Defendants' stated legitimate reasons. The Ninth Circuit has held that, while an employer has the burden of proof to show a "direct threat," a seizure condition can rise to the level of a direct threat. Hutton v. Elf Atochem N. Am., 273 F.3d 884, 893 (9th Cir. 2001). However, the Court finds that neither Plaintiff nor Defendants established their respective burdens as a matter of law.

   v. Summary

Taken together, the Court finds that neither party has satisfied their burden for summary judgement as a reasonable jury could find for either party regarding the discrimination claims.

**b. Claims of Interference**

Section 503(b) of the ADA, provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facia case of interference in violation of the ADA, Plaintiff must show that (1) he exercised or enjoyed a right protected by the ADA, such as requesting or receiving an accommodation; (2) he was subjected to interference, coercion, or threats in relation to the exercise or enjoyment of that right; and, (3) he suffered "a distinct and palpable injury" as a result. Brown v. City of Tuscon, 336 F.3d 1181, 1193 (9th Cir. 2003) (quoting Walker v. City of Lakewood, 272 F.3d 1114, 1123 (9th Cir. 2001)).

Defendants only contest the second and third elements. As above, since there are cross-motions for summary judgement, the Court will (1) first review the evidence for the prima facie case in the light most favorable to Plaintiff and the legitimate reason analysis in the light most favorable to Defendant and (2) second determination at the end of each section to determine if that element was established as a matter of law. Only the evidence properly before the Court in support of each motion is relied upon by the Court for addressing that motion. See Riverside Two, 249

F.3d at 1134.

      i. <u>Prima Facie Case: Interference, Coercion, or Threats</u>

For the second element, interference, coercion, or threats, "the plain language of § 503(b) clearly prohibits a supervisor from threatening an individual with transfer, demotion, or forced retirement unless the individual foregoes a statutorily protected accommodation." <u>Brown</u>, 336 F.3d at 1192-93. Conclusory allegations are insufficient. <u>Id.</u> at 1193.

Plaintiff argues the offer of 30 days of job placement assistance was a *de facto* threat of termination unless he withdrew his ADA request. Plaintiff points to evidence that he felt like the offer was "an ultimatum" and that he needed to remain employed. Defendants counter that Plaintiff was never pressured into taking the job placement assistance or withdrawing his application. As evidence, Defendants point to Plaintiff's subsequent ADA requests, which Defendants argue they took seriously. Defendants also argue that job placement assistance is recognized as a reasonable accommodation under the ADA and, as such, cannot be interference, coercion, or a threat.

In <u>Allen</u>, the Ninth Circuit explained that "even if [the plaintiff] was not qualified to perform [his original job] with reasonable accommodation, [the defendant] still had a duty to engage with the interactive process to consider whether alternative accommodation within the company would be possible." 348 F.3d at 1116. Whether and to what extent Defendants satisfied their obligation is disputed. <u>See also</u> <u>id.</u> (saying further that the plaintiff's failure to cooperate in the job-search process can bear on the duty to seek alternative accommodations). So, while job placement may be an acceptable accommodation in some circumstances, the extent to which the process offered by defendants satisfies that obligation is in dispute.

The Court finds that, taking the evidence in the light most favorable to Plaintiff, he could show that he offered job placement fails to satisfy the ADA's obligation and could be a de facto threat. However, the Court finds that, taking the evidence in the light most favorable to Defendants, the presence of a threat was not established as a matter of law.

      ii. <u>Prima Facie Case: Presence of a Distinct and Palpable Injury</u>

The third element, distinct and palpable injury, "could consist of either the giving up of [the plaintiff's] ADA rights, or some other injury which resulted from [their] refusal to give up

[their] rights, or from the threat itself." Brown, 336 F.3d at 1193.

The Parties do not dispute that Plaintiff withdrew his ADA application at the first meeting. The Parties do not dispute that, by doing so, Plaintiff signed paperwork terminating the ADA interactive process. There is no dispute that Plaintiff opted to discontinue the ADA interactive process to avoid taking the accommodation of job placement assistance.

Defendants argue that, in effect, Plaintiff finally received a job he specifically requested and that Plaintiff began a second and then third ADA process. This is inapposite. The fact that Plaintiff later received a reasonable accommodation is inapposite to whether his protected rights were violated in the first proceeding.

Therefore, the Court finds that, as a matter of law, Plaintiff has satisfied the distinct and palpable injury element. He gave up his ADA rights as a result of the challenged action. Id.

### iii. Legitimate or Pre-Textual Reason

The Parties do not address the burden-shifting analysis under McDonnell Douglas, 411 U.S. at 792, and to the extent that they do, they raise the arguments addressed in the prima facie case above. As such, the Court does not address it further.

### iv. Summary

Taken together, the Court finds that neither party has satisfied their burden for summary judgement as a reasonable jury could find for either party regarding the interference claims.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Bellagio, LLC, and MGM Resorts International's MOTION for Summary Judgment (ECF No. 66) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Brendan Tankersley's MOTION for Summary Judgment (ECF No. 85) is **DENIED**.

///

///

///

**IT IS FURTHER ORDERED** that the parties shall submit a joint pretrial order by **October 30, 2023**.

DATED: September 30, 2023

_____
**RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE**